811 F.2d 1505
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James W. HAGER, a/k/a Tom, Plaintiff-Appellee,
v.
UNITED STATES STEEL CORPORATION, a corporation, Defendant-Appellant.
 No. 86-1074.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 12, 1986.
Decided Jan. 30, 1987.
 
 Before CHAPMAN, Circuit Judge, HAYNSWORTH, Senior Circuit Judge, and MAXWELL, United States District Judge for the Northern District of West Virginia, sitting by designation.
 James T. Carney (Louise Q. Symons, on brief), for appellant.
 Andrew Apostile Raptis, on brief, for appellee.
 PER CURIAM:
 
 
 1
 Following a jury verdict for the plaintiff and the assessment of $100,000.00 in compensatory damages and $25,000.00 in punitive damages United States Steel Corporation sought judgment notwithstanding the verdict or, in the alternative, a new trial. The district court, after appropriately giving careful attention to the facts of the case before it, found that the jury's verdict was reasonable, that it was not against a clear weight of the evidence, and that no showing of legal error had been made and, on that basis, the defendant's motions were denied.
 
 
 2
 Because we agree with the district court that the jury had ample evidence before it to support its verdict, we affirm.
 
 I.
 
 3
 James W. (Tom) Hager, an electric motor repair salesman employed by Abbs Valley Electric, had on various occasions taken motors from United States Steel locations, the various warehouse personnel having neglected to process the appropriate paperwork prior to releasing the motors to Hager. On one such occasion two one hundred twenty-five horsepower motors were released to Hager. Of these motors one was to be repaired and returned, the other was to be kept by Hager; yet, no paperwork was processed. On January 21, 1983, the day that the repaired one hundred twenty-five horsepower motor was returned, Ralph Lipscomb, a central shop foreman, released an X-400 Lee Norse mining motor to Hager to have it checked to determine whether it could be repaired. Again, no paperwork was processed regarding the release of this motor. Hager took the X-400 to a Princeton, West Virginia shop, Abbs Valley Electric having declined the job.
 
 
 4
 Having received information that one of its motors was in the Princeton shop being unable to locate the paperwork memorializing the legitimate release of the motor, and having learned that Hager had taken the motor to the Princeton shop, United States Steel reported the matter on February 1, 1983 to Trooper Nick Gikas of the West Virginia State Police and requested that an investigation be opened.
 
 
 5
 Donald Lee Scott, a sales representative employed by Abbs Valley Electric, traveled to the United States Steel location to inquire about the situation, but was given very little information. He was informed only that Hager had been barred from United States Steel properties. Hager's employment with Abbs Valley Electric was terminated on or about February 3, 1983.
 
 
 6
 Subsequent to his dismissal Hager sought without initial success to talk with United States Steel in order to explain his view of the situation. Finally, Hager was able to arrange a meeting with Michael P. Miano, Assistant General Superintendent with United States Mining Company, for February 22, 1983.
 
 
 7
 Miano telephoned Trooper Gikas prior to the meeting with Hager and informed Gikas of the arranged meeting with Hager. Neither Miano nor other employees of United States Steel informed Trooper Gikas that motors had previously been released from United States Steel locations to Hager without the proper paperwork being completed.
 
 
 8
 On February 22, 1983 following his meeting with Miano, Hager was arrested for grand larceny by Trooper Gikas, the arrest warrant itself having been issued earlier that day upon the complaint of Trooper Gikas. On February 28, 1983 a preliminary hearing was held in the criminal matter and the charges against Hager were dismissed. On May 30, 1984 Hager filed his complaint in this civil action alleging malicious prosecution.
 
 II.
 
 9
 While United States Steel agrees with the district court as to the elements which constitute malicious prosecution under West Virginia law, United States Steel argues that inasmuch as there was insufficient evidence for the jury to find that Hager's prosecution was instigated or procured by the cooperation of the defendant there was no basis for the jury's finding of the second element of the offense and, therefore, the district court erred in not granting the defendant's motion for judgment notwithstanding the verdict. United States Steel also argues that it cannot be liable for malicious prosecution when the prosecution is commenced by a police officer who has probable cause to arrest the defendant. Finally, United States Steel argues that there was no evidence to show that any of its employees acted from any motive other than a desire to see that justice was done.
 
 
 10
 Because we agree with the district court that there was ample evidence presented for the jury to find that the plaintiff had sustained its burden of proving each and every element of malicious prosecution, we find no merit in the defendant's argument.
 
 
 11
 Finally, in support of its position that the district court erred in denying its motion for judgment notwithstanding the verdict, United States Steel contends, as it did before the district court, that it can not be liable for malicious prosecution when its actions were based upon advice from its attorney. For the sound reasons articulated by the district court, we find no merit in this contention.
 
 
 12
 Regarding the district court's denial of its alternative motion for a new trial, United States Steel argues that the plaintiff cannot recover lost wages where there exists no evidence which establishes a causal connection between the plaintiff's loss of employment and the institution of prosecution against him. United States Steel also argues that the trial court erred in instructing the jury in this matter.
 
 
 13
 Because we agree with the district court that the evidence, viewed as a whole, supports the verdict of the jury and because we find no error of law regarding the district court's instruction of the jury in this matter, we find no merit in these arguments presented by United States Steel.
 
 III.
 
 14
 An aspect of this case which is of some concern to the panel is whether under West Virginia law in a case where the standard for compensatory liability includes an element which appears substantially equal to the threshold requirement for punitive damages the plaintiff, in order to obtain an award of punitive damages, would be required to show malice of a degree beyond that which would establish the compensatory liability. This is somewhat troubling because in order to obtain any damage award in this case the plaintiff must prove the fourth element of malicious prosecution, namely that the prosecution was malicious; this element could be sustained, as the district court correctly points out, merely by a showing of malice inferred where a party makes a complaint to the police without probable cause.
 
 
 15
 Although we note our concern, the appropriateness, vel non, of punitive damages in this matter was not raised in the briefs of the parties nor presented in oral argument.
 
 IV.
 
 16
 Upon full consideration of the record before us, the written briefs, and the oral arguments of counsel, we are of the opinion that the disposition of this matter in the district court was entirely proper and should not be disturbed; therefore, the judgment of the district court is affirmed.
 
 
 17
 AFFIRMED.